IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23-CR-10115-003-JWB |
| ) | |
| JESSICA LYNN QUAVE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### SENTENCING MEMORANDUM

COMES NOW, Jessica Lynn Quave, by and through her attorney, Richard C. Paugh, and submits the following Sentencing Memorandum.

### Objections to PSIR

Ms. Quave has no objections to the Pre-sentence Investigation Report in her case.

### Sentencing

Ms. Quave specifically and respectfully submits that a term of 15 years of incarceration and supervised release of not more than 5 years is sufficient, but not greater than necessary, to comply with federal law in light of the circumstances of her case.

### Supporting Law

18 U.S.C. Section 3553(a) requires sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with the following purposes:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

> 1) the nature and circumstances of the offense and the Hertory and characteristics of the defendant (§ 3553(a)(1));
> 2) the kinds of sentences available (§ 3553(a)(3));
> 3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct (§ 3553(a)(6)); and
> 4) the need to provide restitution to any victims of the offense. (§ 3553(a)(7)).

Other statutory sections also give direction in sentencing. Under 18 U.S.C. 3582, imposition of a term of imprisonment is subject to the following limitation: in determining whether and to what extent imprisonment is appropriate based on the Section 3553(a) factors, the judge is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation".

Under 18 U.S.C. 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence".

### Application of the Statutory Sentencing Factors to the Facts of her Case

In the present case, the following factors show that a term 15 years of imprisonment, and supervised release of not more than more than 5 years is sufficient, but not greater than necessary, to comply with federal law in light of the circumstances of her case.

**1. The Nature and Circumstances of the Offense and the Hertory and Characteristics of the Offender**

**(a) Nature and Circumstances of Offense**

Ms. Quave was charged on November 28, 2023 in a eight-count Superseding Indictment

which charged her with one count of Conspiracy to Commit Sexual Exploitation of a Child - Production of Child Pornography and one count of Sexual Exploitation of a Child - Production of Child Pornography. On December 19, 2023 a Second Superseding Indictment was filed, but the charges against Ms. Quave remained the same. On June 11, 2024, Ms. Quave plead guilty to one count of Sexual Exploitation of a Child - Production of Child Pornography.  Ms. Quave took responsibility for her actions without the need for a trial.

### (b) History and Characteristics of Jessica Quave

Jessica was born in Elk City, Oklahoma by her parents, Angela Sue Helmer and James Grant Robinson. At the age of three, Jessica and her other two siblings, were abandoned by her parents. She was taken, along with her siblings, to the Oklahoma Baptist Children's Home.

After this, Jessica was adopted by the Fambrough family. Her time with Fambrough's was up and down considering Jessica's behaviors. Jessica reports that the placement was stable, but traumatic. Jessica states that she witnessed adultery during this time. One time her adoptive mother an her came home to find her adoptive father having sexual relations with a co-worker. This led to the adoptive parents divorcing and Jessica did not have any further contact with her adoptive father.

The separation of her adoptive parents led to her adopted brother being in charge of "babysitting" Jessica while the adoptive mother was away from the home.  For the ages of seven to ten, her adoptive brother touched her inappropriately. Jessica reported this to her adoptive mother and the brother denied it, so Jessica was the one who was punished.

Jessica also tried to stay at a friend's house to get away from her brother. Her friend also had a brother and would molest Jessica as well. Jessica reported this to the friend's mother and her response was "boys will be boys". These incidents let Jessica to act out at school and to

abandon her schooling because she felt betrayed by her adoptive family. Adoptive mother would/could not handle Jessica's behaviors and took her back to the Oklahoma Baptist Children's Home. After this from the ages of 10 to 14, Jessica was placed in the home of the Steward's. Jessica reports that her time with the Stewards was good.

At the age of 14, Jessica was placed back with the Fambrough's in spite of what happened to her previously when she resided there, with 5 other foster children. Just a few months later, Jessica would testify about the abuse the foster children and the animals in the house endured. After this Jessica was placed with yet another foster family on a temporary basis. About a year later her biological mother contacted her.

Having contact with her biological mother was confusing to Jessica, but she yearned for a family and having a relationship with her blood relations was exciting to her. She was placed with an "aunt" on her biological father's side and moved to Ardmore Oklahoma where she attend school and church. It was around this time that Jessica found out she was pregnant.

Jessica had a relationship with Josh Hasley, which started in her Junior year of high school. Mr. Hasley told Jessica that if she got pregnant, that they could live together and she would not have to bounce from one foster home to another. Just before her daughter, Cloey Hasley, was born, Jessica graduated CNA school. Mr. Hasley abandoned Jessica, just like everyone else in her life, until he resurfaced when Cloey was 2 years old. Mr. Hasley took Jessica to court and was given custody of Cloey. Jessica never saw her again. Even in the face of all of these setbacks, Jessica tried to re-build her life.

A year after Cloey was taken from her, Jessica met Michael Rowton. Jessica and Mr. Rowton would have a child together. Jessica though she had finally found a stable relationship to build a life with someone, but that was not the case. Mr. Rowton was physically abusive to

Jessica and it caused Jessica to have her son, Sam, four months early due to the abuse. Thankfully Sam survived.  The relationship between Jessica and Mr. Rowton did not. Jessica then tried to move on with her life.

Jessica went back to school and became a certified nurse in 2008.  Things were looking up.  About this time Jessica met Glen Smith III.  Glen's family accepted and welcomed Jessica into their family.  She also became pregnant with Chance, but as with all of her other relationships in her life, this one did not have a happy ending.

Jessica was adopted by the Fambrough family when she was 3 years old although they gave her up once and then took her back for a short time.  In spite of everything that happened to Jessica in the Fambrough residence, she remained in contact with them.  Unfortunately this came to a tragic end. In 2009, an EF4 tornado hit the Fambrough residence, while Ms. Quave was visiting.  The Fambroughs were killed and Jessica was severely injured, suffering multiple (over 60) broken bones.  Over time, Jessica's physical injuries would heal, but the emotion trauma still exists to this day. She suffers from PTSD due to the incident. The family that she has a deep connection with regardless of the past incidents was taken from her. This would be one of the last positive relationships in Jessica's life.  She still had to deal with Mr. Smith.

After the tornado, FEMA paid Ms. Quave $5,000.  That amount was eaten up by the child support Ms. Quave was ordered to pay, but despite all of this, Jessica was determined to make a life with Mr. Smith and their child, Chance.  Due to her multiple injuries from the tornado, Jessica became addicted to pain medication and this ended her relationship with Mr. Smith.  He was awarded custody of Chance.

Jessica decided to move to Kansas for a fresh start.  She worked as a travel nurse and met Dustin McReynolds.  They began a relationship and her daughter, Kaylynn, was born.  The

relationship turned sour due to Mr. Reynolds' infidelity after a year of being together. Mr. Reynolds moved out of state and Jessica was struggling to make ends meet as a single mother. Jessica allowed paternal grandmother to watch Kaylynn, but paternal grandmother filed an emergency custody motion against Jessica and the father. The motion was granted and Jessica would have no more contact with Kaylynn.

Finally, after all these setbacks and traumas, Jessica turned down a dark path. She started using illegal substances. This is when she met Taylor Mullen. Jessica describes Mr. Mullen as a controlling and manipulative person. Due to her addiction, she wanted to make him happy. She did this by supporting Mr. Mullen financially. He had a daughter and Jessica wanted to be a good role model, but we know what happened during her time with Mr. Mullen.

After Jessica left Mr. Mullen, she once again tried to piece her broken life back together. She met William Quave III. Mr. Quave is in the Army, stationed at Fort Riley, Kansas. They were married in Junction City, Kansas on June 7, 2021. Jessica and Mr. Quave, by all accounts were living a happy life together until the past came knocking and she was indicted for her actions with Mr. Mullen that happened years before. This ended the Quave's marriage.

**2. The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

**(a) to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

Jessica respectfully submits that a term of 15 years and 5 years of supervised release of is sufficient, but not greater than necessary, to comply with federal law in light of the circumstances of her case. Ms. Quave has been in custody since her arrest on November 29, 2023. (285 days)

The Plea Agreement states that both parties are free to argue their respective positions. Ms. Quave has a total offense level of 43 and criminal history I. This results is a guideline range

of life. Statutorily, the sentencing range is 15 to 30 years. Ms. Quave would respectfully ask this Court to sentence her to the minimum statutory sentence of 15 years based on her low criminal history and place her on five years of supervised release. Ms. Quave has shown remorse for her actions.

**(b) to afford adequate deterrence to criminal conduct**

Ms. Quave would respectfully ask this Court to sentence her to the minimum statutory sentence of 15 years based on her low criminal history and place her on five years of supervised release.

**(c) to protect the public from further crimes of the defendant**

Ms. Quave has taken her time while being incarcerated to reflect on the choices she has made. Ms. Quave participates in bible study, medication management and is a trustee at the Butler Co. Jail, working in the kitchen.

**(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

Ms. Quave is in need of ADHD medication and numerous other medications for her Type 2 bi-polar depression and PTSD. Ms. Quave is a nurse by trade, and would still like to help people in the future. Ms. Quave would respectfully ask this Court to designate her BOP placement in Victorville, California.

**3. The Kinds of Sentences Available**

Ms. Quave respectfully submits, if the Court deems it necessary in the advisory guidelines model we now abide by, that the Court sentence her to the minimum statutory sentence of 15 years, and place her on five years of supervised release.

**4. The Need to Avoid Unwarranted Disparities**

Ms. Quave is one of four defendants in her case. Her other three co-defendants are set for jury trial on October 21, 2024. She would submit a term as outlined in paragraph three (3) above.

**5. The need to provide restitution to any victims of the offense**

According to the presentence report, Ms. Quave is subject to the provisions of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act. She is subject to assessments under this act, but does not have the financial where-with-all to pay. Also, Ms. Quave is subject to restitution of no less than $3,000. At this time, no request for restitution has been received.

## Conclusion

For the foregoing reasons, Jessica Quave respectfully submits Court to sentence her to the minimum statutory sentence of 15 years, and place her on five years of supervised release is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

s/ Richard C. Paugh.
Richard C. Paugh, S. Ct. #23639
833 N. Waco Avenue
Wichita, Kansas 67203
(316) 303-0100
rpaugh@patepaugh.com

## CERTIFICATE OF SERVICE

THer is to certify that a true and correct copy of the foregoing was delivered to the United States Attorney's Office and to chambers on the 28th day of August, 2024, through electronic mail to chambers and to AUSA Molly Gordon.

s/ Richard C. Paugh
Richard C. Paugh
Attorney for the Defendant